SOUTHEASTERN MICHIGAN ROOFING CONTRACTORS ASSOCIATION, INC., a Michigan non-profit corporation, Plaintiff,

v.

C. DAVIS ROOFING, INC., a Michigan corporation, Defendant.

No. 00–CV–73844.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 8, 2000.

James R. Case, Christopher L. Kerr, Kerr, Russell and Weber, PLC, Detroit, MI, for plaintiff.

Gayle L. Landrum, Wise & Marsac, PC, Detroit, MI, for defendant.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

COHN, District Judge.

### I. Introduction

This is a breach of contract case. Plaintiff Southeastern Michigan Roofing Contractors Association, Inc. (the Association), a multi-employer trade association, is suing defendant C. Davis Roofing, Inc. (C. Davis), one of the members, over C. Davis' conduct during strike negotiations. The Association filed suit in Macomb County Circuit Court, claiming breach of contract and intentional interference with a business relationship under Michigan law. C. Davis removed the case to federal court on the grounds that (1) because resolution of the dispute is based upon the meaning and intent of a CBA, the Association's claims are preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 158 of the National Labor Relations Act (NLRA), and (2) whether C. Davis acted wrongfully is dependent upon whether it committed an unfair labor practice under § 158 of the NLRA; thus, the complaint raises a federal question.

Before the Court is the Association's motion to remand on the grounds that the dispute is governed by state law. The Association argues: (1) its claims are not preempted by the LMRA, and (2) C. Davis' actions do not arguably constitute an unfair labor practice. For the reasons that follow, the Association's motion will be granted.

### II. Background

#### A.

The Association is an multi-employer bargaining unit[1] of roofing contractors

which collectively bargains on behalf of its members with the United Union of Roofers, Waterproofers & Allied Workers Local No. 149 (Local 149), who represents employees involved in performing roofing work in southeastern Michigan. C. Davis is a member of the Association. On March 14, 2000, C. Davis signed a Continuing Letter of Assent and Power of Attorney (Power of Attorney), under which the Association was given the authority to negotiate with Local 149 on behalf of C. Davis.[2] C. Davis also agreed in the Power of Attorney that "it will not enter into individual negotiations for contract with the Union by any means or at any time while this authorization remains in force. The undersigned specifically waives any right or means to so negotiate or contract while this authorization remains in force." The Power of Attorney also provided that it remained in effect until revoked; C. Davis could revoke the Power of Attorney by giving notice to the Association and Local 149 at least 90 days prior to the expiration of the collective bargaining agreement (CBA) then in effect.[3] It is undisputed that C. Davis never gave notice of revocation.

The CBA in effect at the time the Power of Attorney was executed expired on May 31, 2000. The Association and Local 149 began negotiations for a new CBA around May 5, 2000. The wage rate increase to be paid to roofing employees was a hotly contested issue during negotiations. A tentative agreement, subject to the approval of the members of Local 149, was reached on May 25, 2000 which included an hourly wage increase of $1.40, $1.35, and $1.40 for the years 2000, 2001 and 2002, respectively. Members of Local 149 rejected the agreement. After the CBA expired, around June 1, 2000, members of Local 149 struck. The hourly wage increase continued to be a contested issue during negotiations to end the strike.

On June 7, 2000, C. Davis sent the Association a letter (Letter) reading:

Gentlemen,

Thank you for all the time and effort that you have volunteered to negotiations [sic] with the union. I wish your efforts had been successful, however, since no agreement has been reached, it is time to cut the bullshit and get back to work!

We are prepared to offer labor rate of $1.80 per hour for the next three years.

The roofers will get what they deserve! We will work with or without you to resolve this issue as quickly and amicably as possible.

C. Davis also sent a copy of the Letter to Ed Farley, Business Manager and Chairman of Local 149. The Association also says that C. Davis gave a copy to each of its employees who were members of Local 149.

The Association and Local 149 eventually reached an agreement to end the strike. Under the new CBA, the hourly wage increased as follows: $1.50, $1.60, and $1.70 for the years 2000, 2001 and 2002, respectively.[4]

1. Under 29 U.S.C. § 159(b), the National Labor Relations Board established the practice of certifying multi-employer units. Once established, unions are bound to bargain with the multi-employer unit. See 29 U.S.C. § 158(a)(5), (b)(3).

2. The Association did not sign the Power of Attorney. C. Davis disputes the validity of the Power of Attorney because of this.

3. Because the Complaint refers to the CBA, (see ¶ 16 of the Complaint), the CBA is part of the record before the Court. See Venture Associates. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993); see also Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507 (6th Cir.1999) (quoting James Moore, et al., Moore's Federal Practice § 56.30[4] (3d ed.1998)).

4. At the hearing on December 6, 2000, counsel for C. Davis indicated that C. Davis and Local 149 entered into a separate interim agreement. However, the record is unclear as to whether C. Davis actually implemented the hourly rate it proposed when the interim agreement was reached, or that C. Davis'

B.

1.

■ Thereafter, the Association filed suit against C. Davis in Macomb County Circuit Court, claiming (1) breach of contract, and (2) intentional interference with a business relationship and/or expectancy.[5] In its complaint, the Association says it was

> compelled to accept Local 149's counter-offer at these rates due to [C. Davis'] previously stated intention that it was willing to pay an increase of $1.80 for those respective years. Moreover, upon information and belief, the agreed-upon increases are substantially higher than those obtained by other labor trades in southeastern Michigan as a result of their collective bargaining efforts.

Complaint at ¶ 16. The Association claims that the Letter constituted a breach of C. Davis' obligations under the Power of Attorney inasmuch as it recommended a wage rate above what the Association had offered and engaged in separate negotiations with Local 149. The Association seeks damages in excess of $500,000 for (1) its increased expenses associated with prolonged negotiations, (2) payment of an hourly wage and associated fringe benefits substantially higher than the rate the Association would have agreed to, and (3) other incidental and consequential damages. The Association also seeks damages in excess of $25,000 on its claim of intentional interference with business relationship and/or expectancy.

2.

C. Davis removed the case to federal court. In its removal papers, C. Davis says that the Association's complaint raises a claim that is preempted by § 301 of the LMRA, 29 U.S.C. § 185, and raises a federal question (an unfair labor practice claim) under the NLRA. More particularly, it says:

> resolution of this action is based upon the meaning and intent of a collective bargaining agreement, covered by § 301 of the Labor Management Relations Act, 29 U.S.C § 185, pursuant to which this District Court has original jurisdiction over this lawsuit; and

> [the Association's] causes of acts and [C. Davis'] rights raise a Federal question and arise under Federal Law, to wit, the National Labor Relations Act, 29 U.S.C. § 158(a)(5). As it pertains to the NLRA, Plaintiff's cause of action arises under federal law because whether or not Defendant C. Davis did anything wrong is dependent upon whether its conduct is appropriate under 8(a)5 and 8(b)3 of the National Labor Relations Act.

Removal Petition at ¶ 5.

### III. Motion to Remand

#### A. Federal Preemption—Section 301

##### 1. General Principles

■ To determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). It is undisputed that the complaint does not, on its face, raise a federal question. If, as here, the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable. That a defendant raises a substantive federal defense to a state law claim—including a preemption defense—is immaterial for jurisdictional purposes. As

---

employees returned to work in advance of the new CBA between the Association and Local 149.

**5.** The elements of a prima facie case of tortious interference with contractual relations are: (1) the existence of a contract; (2) the breach of the contract; and (3) the defendants instigated the breach without legal justification. *Henslee, Monek & Henslee v. D.M. Central Transp., Inc.,* 870 F.Supp. 764, 766 (E.D.Mich.1994) (citing Mich.Civ.Jur., 24 Torts § 13.)

the Supreme Court explained in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987):

> [I]t is now well settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

(citation omitted).

■ There is a well-known exception to the well-pleaded complaint rule where Congress intends that a federal statute "completely preempt" an area of state law; any complaint alleging a claim under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55, Therefore, a complaint may be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, it alleges only a state-law cause of action. In *Taylor,* the Supreme Court specifically noted, however, that removal would be inappropriate absent a clearly manifested congressional intent to make certain state claims removable to federal court. *Id.* at 65, 107 S.Ct. 1542.

### 2. Section 301

The Supreme Court has stated that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (footnote omitted); *see also Caterpillar,* 482 U.S. at 393–94, 107 S.Ct. 2425; *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that if a federal cause of

action completely preempts a state cause of action, the complaint comes within the scope of the federal cause of action and necessarily "arises under" federal law). The broad preemptive force of § 301 has been understood to extend to all contract claims based on an alleged breach of a collective bargaining agreement. *See International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 857, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *see also DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994) (stating that "[s]ince 1962, the Supreme Court has held that section 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms.")

In *DeCoe,* the Court of Appeals for the Sixth Circuit detailed a two-step approach to deciding whether § 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

32 F.3d at 216. (citations omitted).

### 3. Application

C. Davis says the Association's complaint is preempted by section 301(a) of the NLRA which provides, in part, that

> [s]uits for violation of contracts between an employer and a labor organization ..., may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). A "labor organization" is defined as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(4).

Here, as the Association correctly notes, this case does not involve a dispute for violation of a contract between an employer and a labor organization; it is a dispute between a multi-employer association and one of its members. Because the dispute is not covered by the plain language of the NLRA, the threshold issue is, therefore, whether a contract dispute brought by a multi-employer association against one of its members falls under § 301. In other words, is this a § 301 case?

C. Davis is correct that Supreme Court has interpreted § 301 expansively to find preemption in numerous situations other than disputes between a union and an employer. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 454, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); *Nolde Bros., Inc. v. Local 358*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) (suits by union against employers and employers against union); *United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Industry v. Local 334*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (suit by local union to enforce the terms of union constitutions against parent union); *Smith v. Evening News, Ass'n.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, (1962) (suit by individual employees to enforce collective bargaining rights as intended beneficiaries). However, C. Davis did not supply, and the Court's research does not reveal, any case holding that § 301 preempts a claim involving a dispute between a multi-employer association and one of its members.

The only case that is remotely similar is *Chicago Area Vending Employers Ass'n v. Local Union No. 761*, 564 F.Supp. 1186 (N.D.Ill.1983), *aff'd*, No. 83–2079, 2123, 1984 WL 21995 (7th Cir. Apr.5, 1984). *Chicago Vending* involved a suit by plaintiff/multi-employer association filed in federal court against the union and one of the members of the association alleging that the union and the member improperly and independently contracted to withhold pay raises due under the CBA. While *Chicago Vending* presented a similar situation, it is distinguishable. The dispute in *Chicago Vending* involved not only a breach of the agreement between the multi-employer association and a member, it also involved a breach of the CBA vis a vis the member and the union's alleged "side agreement" regarding wage increases. The association also specifically claimed that both the member and the union violated the CBA. Thus, the dispute was partly for violation of a CBA between a union and an employer, which falls squarely within § 301.

■ Here, however, the dispute is between only the Association and C. Davis. The Association claims that C. Davis violated the Power of Attorney. The parties' rights under the Power of Attorney are separate from the rights under the CBA. Thus, the complaint does not fall within the scope of § 301 preemption.

### C. Federal Question—LMRA

C. Davis' second argument is that the complaint presents a federal question under the LMRA because whether C. Davis acted wrongfully is dependent upon whether it committed an unfair labor practice under § 158 of the NLRA.

■ While it is true that where a dispute is "arguably" an unfair labor practice, the state court should yield jurisdiction, and the matter should be brought before the National Labor Relations Board (NLRB).[6] *See San Diego Bldg. Trades*

---

**6.** Indeed, the NLRB, not the federal district court, has jurisdiction over unfair labor prac-

*Council Millmen's Union v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In such a case, the state claims would be preempted by the NLRA. *See Sitek v. Forest City Enter. Inc.,* 587 F.Supp. 1381 (E.D.Mich.1984) (holding that employees' state claim against employer for discharge in violation of public policy by refusing to engage in union busting was preempted by the NLRA, and employees' claim should go before the NLRB on an unfair labor practice charge).

However, C. Davis' argument that because its actions may constitute an unfair labor practice, the complaint raises a federal question, misses the point. That a dispute may involve conduct that is arguably an unfair labor practice does not mean that a state law claim raises a federal cause of action for purposes of removal jurisdiction. It means that the state law claim may be preempted by the NLRA. If a state law claim is preempted by the NLRA, it is a defense to be argued in whatever court the state claim was first asserted; it does not provide a basis for removal of a state claim to federal court. In short, whether or not C. Davis' conduct constitutes an unfair labor practice is simply not relevant to whether the Court has federal question jurisdiction for removal. C. Davis' arguments regarding preemption under the NLRA must therefore be made to the state court.

## VI. Conclusion

The Association's complaint fails to present a federal question. Plaintiff's motion to remand is GRANTED. This case is REMANDED to Macomb County Circuit Court.

SO ORDERED.

tices. *See* 29 U.S.C. § 158; *Kentucky General Inc. v. NLRB,* 177 F.3d 430 (6th Cir.1999) (acknowledging that the "Board is vested

with the power to prevent unfair labor practices and to remedy violations of the NLRA.")