114 F.3d 85
 155 L.R.R.M. (BNA) 2298, 70 Empl. Prac. Dec. P 44,750
 James R. CRABBS, Plaintiff-Appellant/ Cross-Appellee,
v.
COPPERWELD TUBING PRODUCTS COMPANY; Ohio Steel Tube
Company, Defendants-Appellees/ Cross-Appellants,
United Steel Workers of America, AFL-CIO, CLC, Defendant.
 Nos. 96-3332, 96-3342.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 29, 1997.
Decided May 19, 1997.
 
 Arnold E. Shaheen, Jr. (argued and briefed), Pataskala, OH, for Plaintiff-Appellant/Cross-Appellee.
 Kurt A. Miller (argued and briefed), Thorp, Reed & Armstrong, Pittsburgh, PA, Thomas F. Cooke, II, Baker & Hostetler, Cleveland, OH, for Defendants-Appellees/Cross-Appellants in No. 96-3332.
 Kurt A. Miller (argued and briefed), Thorp, Reed & Armstrong, Pittsburgh, PA, for Defendants-Appellees/Cross-Appellants in No. 96-3342.
 Rudolph L. Milasich, Daniel M. Kovalik, United Steelworkers of America, Pittsburgh, PA, for United Steelworkers of America, AFL-CIO, CLC in No. 96-3342.
 Before: GUY, MOORE, and COLE, Circuit Judges.
 OPINION
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, James R. Crabbs, appeals the district court's grant of summary judgment in favor of defendants on plaintiff's federal and state law age discrimination claims. See 29 U.S.C. § 621 et seq.; OHIO REV.CODE ANN. § 4112.01 et seq. (Anderson 1995). Defendants cross-appeal the court's dismissal of plaintiff's breach of employment contract claim without prejudice on the grounds that the claim is preempted under federal labor and employee benefit law. See 29 U.S.C. § 185; 29 U.S.C. § 1144(a). Having reviewed the record and the arguments presented on appeal, we conclude that the parties' challenges are without merit, and we affirm.
 
 I.
 
 2
 Plaintiff began work with defendant, Copperweld Tubing Products Company,[1] in 1961 at age 19. Copperweld manufactures mechanical steel tubing. Plaintiff was employed at the company's manufacturing facility in Shelby, Ohio.
 
 
 3
 Crabbs had a lengthy and successful career at Copperweld. From 1961 until 1970, Crabbs worked in various hourly positions. In 1970 he was promoted to his first management position. In the late 1970s Copperweld developed a second manufacturing plant (the original plant was known as Plant # 1 and the new plant was referred to as Plant # 2) and promoted Crabbs to general foreman of Plant # 2 to bring it into operation. In 1979 Crabbs was promoted to superintendent of straightening, cutting, inspection, shipping and testing in Plant # 1. In 1983, Crabbs was the only production line manager chosen by the company to participate in management's negotiation team during collective bargaining negotiations. The company was seeking concessions from the workforce including wage reductions, and Crabbs' rapport with the production line workers was viewed as advantageous to the negotiations, which were successful. In 1985 Crabbs received a plaque from his workers in recognition of his supervisory skills. Also in that year Crabbs received an award from the company for having the most efficient department in Plant # 1.
 
 
 4
 Around this same time, however, due to adverse economic conditions the company initiated a reduction-in-force. Crabbs was demoted from his superintendent position in Plant # 1 to the position of supervisor of the finishing and shipping department in Plant # 2. His salary was unchanged. Crabbs remained in that position until his termination on October 20, 1992.
 
 
 5
 Despite Crabbs' successes, his attitude was doggedly criticized by management both informally and in his performance appraisals. Managers invariably described him as moody, arrogant, sarcastic, prone to temper outbursts, uncooperative, uncommunicative, unwilling to accept responsibility for problems in his work area, and negative. His evaluations by four different supervisors over two decades contained such comments as
 
 
 6
 "temperamental," "difficult to understand," "does not deal tactfully, criticizes and causes hard feelings," "flies off handle without learning all the facts," "does not adapt to changes smoothly and does not modify behavior," tendency to influence others through "negative emotional reaction," "tendency to attack or provoke others unnecessarily," he has a tendency to "feign dire consequences ... often just for effect," he appears to "deliberately alienate others for reasons unapparent," and he must concentrate on improving interpersonal effectiveness.
 
 
 7
 In November 1984, Crabbs' supervisor gave Crabbs his performance evaluation. The supervisor warned Crabbs that he "should think twice" before he had further problems at the company. Crabbs threatened to sue the company over the evaluation. Thereafter, Crabbs did not receive any further written evaluations.
 
 
 8
 In May 1985, Crabbs was counseled by his supervisor and by the director of human resources regarding Crabbs' disruptive behavior at a meeting conducted by the human resources department. He was informed that he would be terminated if he engaged in similar conduct in the future.
 
 
 9
 In March 1986, Crabbs openly criticized management at a gathering of supervisory and hourly employees. His supervisor again counseled Crabbs regarding his negative attitude.
 
 
 10
 From 1989 through 1991, Copperweld made available an industrial counselor to assist Crabbs with his problems. Despite several meetings, Crabbs' behavior persisted.
 
 
 11
 In March 1991, Crabbs was suspended for seven working days due to his attitude problems. The punishment arose out of an incident in which Crabbs stormed out of a meeting in his work area and, in the presence of union employees, slammed the door as he left. He was informed that further behavioral problems would lead to termination. Upon his return from suspension various management officials met with him to discuss areas of needed improvement.
 
 
 12
 For a short time, improvement was observed. Despite an April 1991 reduction-in-force, Crabbs was retained. In January 1992, Crabbs was given a merit raise and words of encouragement on his improvement. In May 1992 Crabbs was chosen as one of two supervisors to represent Copperweld at an annual labor/management seminar in Washington, D.C.
 
 
 13
 Negative feedback regarding Crabbs nevertheless began to filter back to management starting in November 1991. On October 13, 1992, Copperweld's vice president of operations, David Coppock, visited Plant # 2 to investigate reports of problems at Crabbs' work area. Coppock discovered equipment was scratching tubing and required maintenance. Crabbs indicated he would contact maintenance. He returned shortly after telephoning maintenance and smugly told Coppock that the problem was being addressed promptly. Coppock contacted Crabbs' supervisor regarding Crabbs' impertinence, and it was determined that Crabbs would be terminated. Crabbs was replaced in his position by Ken Conley, age 50.
 
 
 14
 At Crabbs' termination, Crabbs' immediate supervisor, John Helinski, informed plaintiff that he was being terminated for "poor performance." Crabbs was offered a severance package but was required to sign a waiver of rights, including the right to file suit for age discrimination, as a condition of acceptance. Crabbs considered the package but ultimately rejected it and filed suit instead.
 
 
 15
 Plaintiff raised numerous federal and state claims arising out of his termination. These included claims for (1) breach of the collective bargaining agreement between Copperweld and the United Steel Workers of America; (2) a request for arbitration; (3) promissory estoppel under federal common law; (4) breach of employment contract under Ohio law; (5) age discrimination under Ohio law; (6) tortious interference with employment contract under Ohio law against defendant Frank E. Burks, director of human resources; (7) violation of the Employees Retirement Income Security Act (ERISA); and (8) promissory estoppel under Ohio law.
 
 
 16
 Plaintiff amended his complaint to add a claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. By stipulation, Burks was later dismissed as a defendant.
 
 
 17
 Defendant Copperweld moved for summary judgment, and plaintiff opposed the motion. The district court granted Copperweld's motion as to all claims except the breach of employment contract and state law promissory estoppel claims. The court declined to exercise supplemental jurisdiction over these claims, see 28 U.S.C. § 1367(c)(3), and dismissed them without prejudice.
 
 
 18
 On appeal, Crabbs challenges the court's grant of summary judgment in favor of Copperweld on his age discrimination claims. Copperweld cross-appeals the court's dismissal without prejudice of plaintiff's breach of employment contract claim.
 
 II.
 
 19
 On appeal, Crabbs argues that summary judgment was improperly granted in favor of defendant on the age discrimination claims in that a genuine issue of material fact remains as to whether age was a determining factor in plaintiff's termination.
 
 
 20
 This court reviews a district court's grant of summary judgment de novo. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In evaluating the evidence we must draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).
 
 
 21
 Plaintiff argues that direct and circumstantial evidence proves that age was a determining factor in his termination.[2] He points to several items of evidence, which we address in turn.[3]
 
 
 22
 As evidence of discrimination, plaintiff first relies on statements made to him by the director of human resources, Frank Burks. Upon Crabbs' return from suspension in March 1991, Crabbs met with Burks to discuss a remediation plan for his conduct. At that time Crabbs claims that Burks reminded him that he would qualify for his thirty-year pension in October of that year and urged him to retire. Burks offered to work out a severance package preserving those benefits. He allegedly told Crabbs "in my opinion, if you decide to come back to work, you won't last two weeks in the mill. If you sneeze, you're history."
 
 
 23
 We conclude no justifiable inference of age discrimination may be made by these remarks. There is nothing in this record to suggest Burks' basis for his opinion rested on plaintiff's age rather than on his history of attitudinal and behavioral problems. Given the amount of evidence documenting Crabbs' personality conflicts, if anything, Burks was offering Crabbs a way to leave with dignity. See, e.g., Barnhart v. Pickrel, Schaeffer & Ebling Co., No. 90-CV-330, 1992 WL 551487, at * 4 (S.D.Ohio May 25, 1992), aff'd, 12 F.3d 1382 (6th Cir.1993) (employer request that employee with performance problems retire early was to allow plaintiff to "withdraw gracefully").
 
 
 24
 Crabbs also points to Burks' statement to Crabbs at the time of his termination that if Crabbs did not sign the settlement agreement he "would get nothing." We fail to see nor does plaintiff explain any logical connection between this statement and Crabbs' age.
 
 
 25
 Crabbs next asserts that Copperweld's selective use of settlement agreements shows discrimination. While it is true Copperweld did not seek waivers from every employee it terminated, there is nothing in its actions in seeking a waiver from plaintiff that would suggest the company had discriminated against him on the basis of age. In contrast, there is evidence that plaintiff had previously threatened to sue the company and a waiver would be prudent in exchange for benefits under any settlement agreement.
 
 
 26
 As additional support for his claim that Copperweld discriminated against him based on age, Crabbs points to the promotion of Wynn Kearns. Kearns, age 28, received his promotion, after a number of supervisors were shifted into different positions as a result of Crabbs' departure. In addition, the company's vice president of operations testified that Kearns' promotion was based on his "energy and enthusiasm." Again, this court finds no justifiable inference of discrimination against Crabbs based on these facts. There is simply nothing malicious to be inferred from the company's actions in filling available positions in the company with qualified individuals.[4]
 
 
 27
 Crabbs also contends age discrimination is shown based on disparate treatment of similarly situated employees. In support of this argument, Crabbs points out that neither of the supervisors on the other shifts responsible for his work area were disciplined for the damaged tubing discovered by Coppock during his visit to Plant # 2, which visit led to Crabbs' termination.
 
 
 28
 That argument is beside the point. Crabbs was not terminated because of defective tubing but, rather, because of his poor attitude as a worker. We recognize that Crabbs' supervisor told him he was being terminated for poor performance. While the term "performance" is broad, there is no doubt from this record that Copperweld evaluated attitude as a part of an employee's performance. Even if evidence regarding discipline of similarly situated employees were relevant, Crabbs fails to address whether these other supervisors had prior disciplinary records comparable to Crabbs.[5]
 
 
 29
 Finally, Crabbs contends that there is a genuine issue of material fact as to whether Copperweld truly discharged him for poor performance. In support, he points to his longevity with the company, his promotions, his recent merit raise, and the offering of severance benefits. This argument again relates back to the issue of attitude as a factor of performance. Focusing on that attribute of Crabbs' employment history, no genuine issue of material fact can be shown to suggest that Crabbs was discharged based on age.
 
 
 30
 As this court has stated before: "Personality conflicts alone cannot supply a basis for an ADEA claim. '[A]n employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory.' This is especially true when, as in the present case, a management level job is involved." Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982) (citations omitted).
 
 III.
 
 31
 In its cross-appeal, Copperweld argues that the district court erred in dismissing Crabbs' breach of employment contract claim without prejudice. Count IV of Crabbs' amended complaint alleged that defendant's employment manuals, pension booklet, Section 6.25 of the 1989 collective bargaining agreement, and related oral agreements "constitute[d] an employment contract" between Crabbs and Copperweld. The district court held that the claim was not preempted under either federal labor or employee benefits law.
 
 A. ERISA Preemption
 
 32
 We first consider whether the district court erred in determining that plaintiff's breach of employment contract claim was not preempted under ERISA. We review de novo this conclusion of law. Section 514(a) of ERISA preempts "any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C. § 1144(a). A law relates to an employee benefit plan "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Some state actions may affect employee benefit plans "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Id. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Even if an action refers to a plan, however, the action will not "relate to" the plan for preemption purposes when the action only peripherally affects the plan. See Thiokol Corp. v. Roberts, 76 F.3d 751, 754 (6th Cir.), cert. filed, 64 U.S.L.W. 3808 (1996).
 
 
 33
 In this case, plaintiff asserted that the anti-competition clause contained in the employer's summary of plan benefits supported his claim of an employment contract. In construing whether ERISA preempted Count IV on this basis, the district court stated as follows:
 
 
 34
 In the instant case, the court does not read Plaintiff's complaint as seeking to recover ERISA benefits nor does it understand the claim to allege a violation of an ERISA covered plan.... Instead, Plaintiff seeks to offer a provision from a summary of the plan which provides that certain benefits are only payable if the employee does not engage in any business or employment in competition with Copperweld. This provision supposedly helps Plaintiff establish that Copperweld encouraged employees to remain with the company.... It is unclear to the court how such evidence aids Plaintiff in establishing the merits of his claim--namely, that his implied employment agreement protected him from discharge without just cause. Furthermore, the court is unsure as to whether the ERISA summary's probative force exceeds its tendency to mislead or confuse the fact finder. Due to the questionable relevance and admissibility of the ERISA summary, the court finds that the reference to it in Plaintiff's count IV is sufficiently attenuated as to render ERISA preemption pointless.
 
 
 35
 We agree with the district court's observations that the plaintiff's reference to the benefit plan summary in his breach of contract claim is too attenuated to require that claim to be construed as affecting that plan. Consequently no preemption has been shown.
 
 B. Preemption Under Federal Labor Law
 
 36
 Plaintiff's claim in Count IV further alleges that Section 6.25 of the 1989 collective bargaining agreement constituted part of plaintiff's employment contract. That provision protects rights of non-bargaining unit employees to return to the bargaining unit. Crabbs asserted his rights under the provision as a third-party beneficiary.
 
 
 37
 Copperweld moved for summary judgment on Crabbs' breach of employment contract claim on the ground that the claim required interpretation of a collective bargaining agreement and was therefore preempted under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. In his opposition to defendant's motion for summary judgment, however, plaintiff requested leave to modify his claim in Count IV to delete any reference to the collective bargaining agreement as that reference was not "essential" to his breach of contract claim. The district court in its summary judgment opinion granted that request and concluded therefore that preemption was not warranted. Defendant claims that the district court abused its discretion in allowing plaintiff to amend Count IV of the complaint to delete any reference to the collective bargaining agreement.
 
 
 38
 Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires." In this case, Copperweld successfully argued that Crabbs was not entitled to protection under the collective bargaining agreement in opposing Crabbs' claims for breach of the collective bargaining agreement and request for arbitration. Plaintiff's dropping of the collective bargaining agreement language in his breach of contract claim is consistent with these positions. Nevertheless, defendant contends that plaintiff should somehow be estopped from seeking to amend his claim based on these prior "admissions."
 
 
 39
 We conclude no abuse of discretion has been shown. The district court merely deleted tangential references to Copperweld's collective bargaining agreement that were not germane to plaintiff's breach of employment contract claim. While the amendment does eliminate one of defendant's defenses to the breach of employment contract claim, it in no way prejudices the defendant from asserting any arguments it may choose to make against the merits of that claim.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 Defendant Ohio Steel Tube Company is the predecessor corporation to Copperweld
 
 
 [2]
 Plaintiff does not strictly rely on the shifting burdens analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973), because in his case he was replaced by an older worker
 
 
 [3]
 As an initial matter, we note that the parties quibble over whether plaintiff's evidence is "direct" evidence or "circumstantial" evidence. Either form of evidence is acceptable. See, e.g., United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence") (involving Title VII claims of race discrimination); Lynch v. Freeman, 817 F.2d 380, 382 (6th Cir.1987) (direct evidence of intent to discriminate is not required)
 
 
 [4]
 Crabbs' characterization without more of the various job transfers following his termination as a "shell game" is mere allegation
 
 
 [5]
 As part of Crabbs' kitchen sink approach to the evidence in this case, as additional evidence of disparate treatment, he refers to the affidavit of Richard Gilbert, a former employee in Copperweld's human resource department, who retired in March 1986, six and one half years before Crabbs' termination. Gilbert alleges Burks pressured him to retire. Crabbs makes no attempt to explain how this remote incident relates to his claims