Terry WILSON, Plaintiff,

v.

CONTINENTAL DEVELOPMENT CO., et al., Defendants.

No. 5:97CV213.

United States District Court, W.D. Michigan, Southern Division.

Aug. 24, 1999.

**652**

Jeanette S. Eirich, Jeanette S. Eirich Law Offices, Denver, CO, Lawrence R. Mathews, Mathews, Ramos & Associates, Detroit, MI, for Plaintiff.

Terry L. Wilson, Centerville, VA, pro se.

John A. Waters, Grand Rapids, MI, for Defendants.

John E. Anding, Drew, Cooper & Anding, Grand Rapids, MI, for Drew, Cooper & Anding.

Marilyn Nickell Tyree, Smith, Haughey, Rice & Roegge, Grand Rapids, MI, for Gates Rubber Co.

Douglas A. Dozeman, Colleen D. Lundgren, Warner, Norcross & Judd, LLP, Grand Rapids, MI, for Reid Tool Supply.

Johyn A. Yaeger, Willingham & Cote, PC, East Lansing, MI, Mark H. Fink, Maddin, Hauser, Wartell, RothSouthfield, MI, for John Cote.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

This is a civil action arising from an unsuccessful business venture. This court has subject-matter jurisdiction both over plaintiff's federal-question claims, 28 U.S.C. § 1331, and his state-law claims, as the parties are of diverse citizenship, 28 U.S.C. § 1332.

Plaintiff, Terry Wilson, alleges that he was the inventor of a device (called "The Protector") designed to prevent damage to hoses in the industrial setting. Mr. Wilson has brought suit against his former business associates—Continental Development Company, Michael D. Sebastian, and Robert L. Hoag—all of whom were shareholders, along with plaintiff, in defendant Crown Industries, Inc. Crown Industries, Inc. was a corporation formed by the parties to market and sell plaintiff's invention. Also named as defendants are the law firm Waters & Morse and attorney John Waters, who acted as patent counsel for Crown Industries, Inc. During the life of this case, plaintiff named numerous other

business entities and attorneys as defendants, but those parties have previously been dismissed.

Plaintiff commenced this action by filing a *pro se* complaint on October 16, 1997. That pleading was superseded by an amended complaint filed by plaintiff on January 9, 1998 (docket # 32). The amended complaint was also submitted *pro se*. Thereafter, plaintiff procured the services of counsel Jeanette Eirich, who filed a second amended complaint (docket # 62) on May 7, 1998. Ms. Eirich was ultimately granted leave of court to withdraw her appearance on the basis of irreconcilable differences with plaintiff. Plaintiff later retained attorney Lawrence R. Mathews, who presently represents him. Plaintiff's claims, however, continue to be embodied in the second amended complaint filed by attorney Eirich. The remaining defendants (Crown Industries, Continental Development Company, Robert L. Hoag, Michael D. Sebastian, Waters & Morse, and John Waters) filed an answer to the second amended complaint (docket # 67), which includes a counterclaim seeking to recover loans by Continental Development and Robert Hoag to plaintiff in the approximate amount of $11,000.

Plaintiff's second amended complaint purports to set forth nine causes of action against the present defendants. Counts I and II are civil RICO claims asserting a pattern of racketeering activity. Count III asserts a claim for fraud arising from defendants' naming of defendant Hoag as the inventor in a patent application covering an invention allegedly belonging to plaintiff. Original count IV was dropped from the second amended complaint. Count V sets forth a shareholder's derivative claim for misappropriation of corporate opportunity stemming from defendants' alleged diversion of business from Crown Industries to other unnamed entities. Count VI sets forth a claim for civil conspiracy. Count VII alleges a theft of trade secrets, asserting that defendants removed plaintiff's property and then falsely claimed that the property had been stolen. Plaintiff brings count VIII as a shareholder of Crown Industries, Inc. for vindication of shareholder's rights. Count IX is for breach of the written contract between the parties. Count X is for tortious interference with a contract or business opportunity.

Presently pending before the court is a motion for summary judgment filed by defendants Continental Development Company, Crown Industries, Inc., Waters & Morse, P.C., Michael D. Sebastian, Robert L. Hoag, and John A. Waters (the moving defendants). The motion seeks a summary judgment dismissing all of plaintiff's claims in his second amended complaint. In addition, defendants Continental Development and Hoag seek judgment on their counterclaim in the amount of $11,410.69, minus certain setoffs, representing the amount asserted in the counterclaim as recovery of loans made to plaintiff. (Motion For Summary Judgment, docket # 102). Plaintiff has responded to the motion, arguing that genuine issues of material fact preclude the entry of summary judgment. For the reasons set forth below, the court determines that plaintiff has failed to raise a triable issue of fact in support of any of his claims, except his claim for royalties in the amount of $416 and his demand for issuance of stock certificates. Summary judgment will enter on behalf of defendants on all other claims. Robert Hoag will be granted summary judgment against plaintiff on his counterclaim for $4,493.87. Plaintiff will be granted summary judgment on Continental Development's counterclaim. Plaintiff will receive an offset of $416 against his outstanding debt to Crown Industries, Inc. and injunctive relief ordering the issuance of stock reflecting his 13% ownership in Crown Industries, Inc.

### Summary Judgment Standard

As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150

(6th Cir.1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–81 (6th Cir.1989). While preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial. Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *Sable v. General Motors Corp.*, 90 F.3d 171, 175 (6th Cir.1996); *Payne v. Board of Educ.*, 88 F.3d 392, 397 (6th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1385 (6th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. 2505); *see also, Crabbs v. Copperweld Tubing Products Co.*, 114 F.3d 85, 88 (6th Cir.1997).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wathen v. General Elec. Co.*, 115 F.3d 400, 403 (6th Cir.1997). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir.1993). Once defendants show that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the bur-

den of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To sustain this burden, plaintiff may not rest on the mere allegations of his pleadings. FED.R.CIV.P. 56(e); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995); *Cox*, 53 F.3d at 150. A party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *See Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 999 (6th Cir.1994); *Street v. J.C. Bradford & Co.*, 886 F.2d at 1478–81; *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989). In so doing, plaintiff must set forth *specific facts* showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *see Kensu v. Haigh*, 87 F.3d 172, 175 (1996); *Brennan v. Township of Northville*, 78 F.3d 1152, 1156 (6th Cir.1996). The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

### Undisputed Facts

The following facts appear of record. When a factual issue is subject to dispute, the court has either resolved the dispute in favor of plaintiff for purposes of the pending motion or has noted the dispute and finds it to be immaterial.

Plaintiff, Terry Wilson, was formerly employed by an industrial supply company in California. During this employment, he perceived the need among industrial corporations for a product that would cover hoses and protect them from truck tires, sharp objects, and other sources of damage. Mr. Wilson's idea was to cover the hoses with a protective sleeve. In 1990, he moved from California to Grand Rapids, where he found a company, Cadillac Plastics, which manufactured a material suitable for use as a hose covering.

Plaintiff began to do business under the name Crown Manufacturing. It is unclear whether Crown Manufacturing was a corporation or a d/b/a, but it appears to have been the latter. In November of 1990, plaintiff filed a disclosure with the Patent and Trademark Office on behalf of Crown Manufacturing. The disclosure (Plf.Ex.A)[1] was not a patent application and secured no patent rights. Rather, it merely served as evidence of the invention's conception date. The disclosures describe an "air hose jacket" made from nylon tubing of three-quarter inch inside diameter and one-inch outside diameter. The tubing was cut into one or two-inch lengths, with each length having a rubber ring somehow affixed to each end. The tubing would slide over a standard air hose to prevent damage to the hose "by objects such as tacks, nails, dropped tools, or the driving of vehicles over hose."

Mr. Wilson, operating under the name Crown Manufacturing, began fabricating and marketing his product, under the name "The Protector." In early 1991, Mr. Wilson began to look for working capital. He contacted the Chamber of Commerce, who referred him to defendant Robert Hoag. Mr. Hoag eventually put together a group of investors including Hoag himself, defendants Michael Sebastian and Richard Davis, and defendant Continental Development (a corporation substantially owned by defendant Sebastian). The parties engaged in negotiations, which eventuated the execution of a "Letter of Understanding" signed by plaintiff, Hoag, Davis and Sebastian. The Letter of Understanding dated May 14, 1991, contained the following material provision:

- The parties would form a new corporation called Crown Industries, Inc. The stock of the corporation would be owned by plaintiff Terry Wilson (13%), defendant Dick Davis (13%), defendant Robert Hoag (13%), and defendant Continental Development (61%). Any patent for the product would be owned by Crown Industries (¶ A).

- The shareholder defendants would make initial cash contributions of $260 for Hoag and Davis and $1,220 for Continental Development. The cash contributions for Davis and Hoag were capped at $650 while that of Continental was capped at $3,050. Plaintiff would not be required to make a cash contribution, but would contribute to the corporation finished inventory, raw materials, advertising materials, a customer list, patent drawings, and other material information (¶ B).

- Plaintiff, under Crown Manufacturing, would be entitled to royalty payments on all sales according to an agreed upon schedule: three percent of the first $300,000 in sales; two percent of the next $700,000 in sales; and one percent of all sales above $1 million (¶ C).

- In addition to the foregoing royalties, Crown Manufacturing would be entitled to a sales commission of ten percent on all sales it developed. Crown Manufacturing would also be entitled to a weekly draw against future commissions (¶ D). Likewise, any shareholder who developed business would be entitled to a ten percent commission (¶ E).

- Defendant Continental Development would be responsible for paying the expenses of marketing, bookkeeping, patent research and application, and other operational sales expenses. In return, Continental Development

---

1. References to exhibits are to those documents appended to plaintiff's brief (docket # 104) or defendant's brief (docket # 102). Although neither party has provided sworn or certified copies of documents as required by Fed.R.Civ.P. 56(e), neither party has objected to this dereliction on the part of the other. Any objection to the lack of attestation is therefore waived. *See Johnson v. United States Postal Serv.,* 64 F.3d 233, 237 (6th Cir.1995); *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir.1994); *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir.1993).

would be entitled to a management fee in accordance with an agreed upon schedule (¶ F).

- Wilson and his d/b/a Crown Manufacturing agreed to make immediately available to Continental Development any and all patent application materials (¶ G).
- Plaintiff, as Crown Manufacturing, would be solely responsible for paying rent to West Michigan Machining and Grinding for office space and would be responsible for its own phone bills and expenses associated with its sales efforts (¶ H).
- The initial market price for the product would be $119 per 25–foot unit (¶ I).
- West Michigan Machining and Grinding would be the sole supplier for the product until such time as the shareholders mutually agreed to a more cost-effective supplier (¶ J).
- Plaintiff Terry Wilson would be responsible for sales, defendants Davis and Sebastian for marketing, defendant Hoag for finance, and defendant Continental Development for management. (¶ K).
- Any modifications to the letter of understanding would require a vote of 74% of the shareholders. (¶ N).

(Plf.Ex.B).

Although no shares of Crown Industries, Inc. were ever issued, the parties apparently began doing business in 1991 under this corporate form. In early 1992, plaintiff moved from Michigan to Virginia and apparently abandoned any further duties with regard to Crown Industries, Inc. or the marketing and sales of its hose protector product. Plaintiff admits (see Sec.Am. Comp. ¶ 31; Brief, docket # 104, at 3) that he relocated to Virginia "to pursue other interests," and there is therefore no factual dispute concerning plaintiff's lack of activity on behalf of the corporation after early 1991. Nevertheless, the company's activities continued through the efforts of the other shareholders.

Crown Industries engaged attorney John Waters of the law firm Waters & Morse to procure patent protection for The Protector. Plaintiff came to Grand Rapids to meet with Mr. Waters to discuss the invention with him. On or around February 22, 1992, Mr. Waters mailed plaintiff a declaration for patent application (Plf.Ex. C) covering a "method and apparatus for protecting a hose." The record does not clearly disclose the precise nature of the invention covered by the declaration. The declaration listed defendant Robert Hoag as the sole or first inventor and Terry Wilson as a joint inventor. The declaration was accompanied by a note asking plaintiff to sign the declaration as second joint inventor. Also included was a proposed assignment of patent rights to defendant Continental Development. Plaintiff refused to sign either the application or the assignment, because he did not believe that Hoag was a joint inventor and because he objected to assignment of patent rights to Continental Development.

On November 16, 1992, Mr. Hoag signed a declaration for patent application (Plf.Ex.E) showing Hoag as the sole inventor and not mentioning plaintiff. Eventually, United States Patent 5,353,843 was issued by the Patent and Trademark Office under date October 11, 1994. The patent (Def.Ex.D) shows defendant Hoag as the sole inventor and recites that Crown Industries, Inc. is the assignee. The '843 patent generally describes a jacket for protecting hoses from external damage by use of a number of tubular segments. Significantly, however, the patent claims disclose a different method for articulation of the tubes. Plaintiff's invention, as set forth in his disclosure document (Plf.Ex.A) envisioned that each segment of the tube would have a rubber ring affixed to each end, allowing limited articulation between the segments. The '843 patent disclosed the existence of the previous device as

prior art, but stated that the rubber rings tended to break off and provided a less desirable means of articulation. The claims of the '843 patent, by contrast, disclose segments interfitting by means of beveled ends, such that the beveled surfaces would mate and facilitate articulation of the hose and hose jacket. (*See, e.g.,* '843 patent, claim 1). None of the claims of the '843 patent envisioned rubber rings or washers affixed to the ends of the segments.

The parties disagree concerning the inventorship of the beveled ends as disclosed in the '843 patent. Plaintiff asserts that he informed defendants of this method orally, and that beveled ends were disclosed in working papers that he left behind when he moved to Virginia. Defendants assert that Mr. Hoag conceived the idea of beveled ends. This factual dispute, while genuine, is not material, because none of plaintiff's legal rights depend upon his being named in the patent as the inventor, for reasons explained in the Discussion section below. Furthermore, it is undisputed that plaintiff, in the Letter of Understanding, expressly agreed to assign all his patent rights, and all drawings, to Crown Industries. For present purposes, the court will assume without deciding that plaintiff was the inventor of the invention set forth in the '843 patent.

In plaintiff's absence, Mr. Hoag and the other shareholders continued the business of Crown Industries. On March 31, 1992, Crown Industries appointed Tecna International as nationwide distributor for The Protector system for a two-year period. The arrangement was embodied in a letter of agreement (Plf.Ex.D) which established an exclusive distributorship in the continental United States. Contrary to plaintiff's suggestion, the distributorship agreement did not oblige Tecna to sell $150,000 in product. Rather, the agreement set this as a goal for the first 24 months and allowed Crown Industries to add further distributors or to terminate the agreement if the goal were not reached. Plaintiff has not produced any evidence concerning actual sales made by Tecna.

In May of 1994, a representative of Crown Industries met with Dave Douglas, an employee of Gates Rubber Company. During this discussion, Mr. Douglas apparently agreed that Gates would make each of its distributors aware of The Protector device, so that customers could contact Crown Industries directly for purchase of the product. These discussions were memorialized in a written memorandum dated May 27, 1994. Plaintiff asserts, without proof, that Crown Industries signed a $5 million contract with Gates Rubber Company and that he is owed hundreds of thousands of dollars on this transaction. Despite plaintiff's opportunity to conduct discovery, there is no evidence that such a contract ever existed, nor is there evidence of any payment made by Gates to Crown Industries. The only admissible evidence indicates that no such contract ever existed and that sales to Gates customers were insignificant. (Deposition Answers of David Douglas; Supplemental Affidavit of Robert L. Hoag, ¶ 2, docket # 105). Significantly, Mr. Douglas testified that Gates never even considered a business affiliation, but merely authorized Crown Industries to mail the Gates distributors a brochure, with a cover letter from Mr. Douglas. (Plf. Brief at 8, quoting Douglas Dep.). In an effort to create an issue of fact, plaintiff's counsel quibbles with minor discrepancies in defendants' proofs. The fact remains, however, that plaintiff has not produced any evidence—whether signed contract, letter agreement, or sworn first-hand testimony—upon which a jury could base a finding that a contract existed or that payments were received from Gates.

Similarly, plaintiff alleges that defendants somehow merged Crown Industries with Universal Plastics Company. Plaintiff has not adduced a scintilla of evidence to support this claim. The only admissible evidence is that the arrangement with Universal Plastics Company is for the manu-

facture of The Protector item and that nothing has been done pursuant to this arrangement because of the pendency of the present litigation. (Hoag Aff., ¶ 4, docket # 105). Despite the opportunity for discovery, plaintiff has produced no merger agreement or other proof to support his accusations.

The only sworn evidence in this case concerning the sales of The Protector system is provided by the Sebastian affidavit, which indicates that total sales of the product from 1992 to 1999 were $13,867.42. (Sebastian Aff., ¶ 5, docket # 102). Under the contract, this would generate a royalty, at the 3% rate, of $416.02. Plaintiff asserts that an issue of fact exists as to the amount of sales, but has not produced any evidence to support his contention. Significantly, plaintiff has listed an expert accountant as a witness in this case, ostensibly to testify concerning the company's sales upon review of its accounting records. (See docket # 87). The record is devoid of an expert witness report or testimony from plaintiff's expert establishing the existence of sales greater than those claimed by defendants. The court therefore finds that the total sales and royalty under the Letter of Understanding are undisputed. This conclusion is not undermined by the admitted existence of a licensing agreement with Kalfact Plastics. Plaintiff has adduced no proof that any payments under this agreement created a right to compensation to plaintiff under the Letter of Understanding.

Plaintiff's complete failure of proof to contradict defendant's sales figures is underscored by plaintiff's own investigation. In 1997, before filing suit, plaintiff engaged a private investigator, R.J. Burris Investigations, to find out the extent of sales and distribution of The Protector by Crown Industries. Plaintiff was referred to R.J. Burris by Christopher Hastings of Drew, Cooper & Anding. The investigation report (Def.Ex.E) shows that the product

was not a success, that Gates Rubber was not distributing the product, and that the Protector was "little known in the industry." Plaintiff's reaction to the report was to sue Hastings and Drew, Cooper & Anding, accusing them of conspiracy with the other defendants.

Also undisputed is the fact that plaintiff borrowed $5,174.82 from Crown Industries, Inc. and $4,493.87 from defendant Robert Hoag. Recovery of these amounts is the subject of the counterclaim by defendants Hoag and Continental Development (docket # 67). During his deposition, plaintiff admitted the accuracy of the amounts due (p. 63). Despite this admission, plaintiff's counsel argues that the court should accept a lower figure, on the basis of a document dated in 1991. (Plf.Ex.L). Although the 1991 accounting may have been accurate eight years ago, it is insufficient to create a genuine issue of material fact as to the amount now due and owing. Exhibit 2 to plaintiff's deposition, which plaintiff testified was accurate, reflects payments post-dating defendant's Exhibit L. Consequently, the court, relying on plaintiff's own testimony, finds no genuine issue of material fact concerning plaintiff's liability to Hoag for $4,493.87 owed on the counterclaim. Crown Industries, Inc. did not pursue any counterclaim, and there is no proof that Continental Development is owed anything.

### *Discussion*

### I. Plaintiff's Claims

#### A. *Civil RICO*

Counts I and II of the second amended complaint assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO).[2] Count I asserts a violation of 18 U.S.C. § 1962(a), which makes it unlawful for a person who has received income derived from a pattern of racketeering activity to use or invest the income to acquire any interest in a business engaged in commerce. Plaintiff's theory of

---

**2.** The first amended complaint contained a third RICO count, which plaintiff abandoned

by deleting it from the second amended complaint.

RICO violation in count I is that defendants committed predicate acts of mail fraud by mailing to the Patent and Trademark Office a fraudulent patent application which falsely claimed that Mr. Hoag was the inventor of the patented invention. Count II is for violation of 18 U.S.C. § 1962(b), which makes it unlawful for any person through a pattern of racketeering activity to acquire or maintain an interest in any enterprise engaged in commerce. Plaintiff's theory of RICO violation for count II is that defendants committed predicate acts of mail fraud, again by submitting false patent applications to the Patent and Trademark Office. Plaintiff further alleges that defendants committed mail fraud by mailing him misleading documents in an effort to induce and to sign away his interest in Crown Industries. Plaintiff expressly alleges, however, that he refused in each case to sign the proffered documents. (*See* Sec.Am.Comp. ¶¶ 44, 62).

■ A plaintiff may recover civilly for a defendant's criminal RICO violations if the defendant's violations have caused the plaintiff injury in his business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–96, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The right to bring a civil RICO action is created by 18 U.S.C. § 1964(c), which provides that any person injured in his business or property by reason of a violation of section 1962 may sue in the appropriate district court. Consequently, in order to maintain a civil action under section 1964(c) for violation of one of the provisions of section 1962, a plaintiff must first demonstrate that the defendant has committed a criminal RICO violation and prove each prong of this predicate criminal activity. *See Central Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 183–84 (6th Cir. 1993). The plaintiff must then demonstrate that a causal nexus exists between his injury and the predicate acts. Otherwise, he has no standing to sue under section 1964(c). *Kramer v. Bachan Aero-*

*space Corp.*, 912 F.2d 151, 154 (6th Cir. 1990).

For purposes of analyzing the RICO claims in counts I and II, the court will assume without deciding that plaintiff has alleged predicate acts of mail fraud. Mail fraud is one of the predicate acts enumerated in the RICO statute. 18 U.S.C. § 1961(1)(B). Nevertheless, plaintiff's RICO claims falter on the second prong, under which plaintiff must demonstrate that a causal nexus exists between his injury and the predicate acts of mail fraud. Plaintiff therefore has no standing to sue under section 1964. *Kramer*, 912 F.2d at 154.

■ The predicate acts of mail fraud underlying count I consist of the allegedly false patent applications mailed to the Patent and Trademark Office. Assuming that defendants falsely represented the identity of the inventor to the Patent and Trademark Office, this alleged misrepresentation cannot form the basis for a RICO suit by plaintiff, as a matter of law. A civil RICO plaintiff may not maintain a claim based upon predicate acts of mail fraud absent evidence that the defendants made representations or omissions of material fact to the plaintiff and evidence that the plaintiff relied on those misrepresentations or omissions to his detriment. *See Central Distribs.*, 5 F.3d at 184; *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). "Thus, the defendant must make a false statement or omission of fact *to the plaintiff* to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim." 5 F.3d at 184 (emphasis added). Consequently, alleged misrepresentations made to the Patent and Trademark Office are insufficient as a matter of law, as the representations were not made to plaintiff and he could not have relied on them.

■ Moreover, plaintiff has not and cannot show a causal nexus between his injury and the alleged predicate act. As a matter of contract, plaintiff assigned all of his

rights in the invention to Crown Industries, in exchange for shares of stock. The invention thereafter belonged to Crown Industries, not plaintiff. Except as a matter of pride, plaintiff had no further interest in the invention or in any patent covering it. Plaintiff had assigned all such interest to the corporation, in exchange for shares and promises of royalties and other payments. Consequently, even assuming a misrepresentation concerning inventorship, plaintiff was not injured thereby. His right to collect royalties and other payments did not depend on the invention's being patented, nor did it depend upon the patent reflecting plaintiff's name as the inventor. In the absence of evidence showing injury flowing directly from the predicate act, plaintiff has no RICO claim. *Kramer,* 912 F.2d at 154; *see Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 328–30 (6th Cir. 1999).

 Count II fares no better. Count II is based upon an alleged violation of section 1962(b), which makes it unlawful for a person through a pattern of racketeering activity to acquire an interest in any enterprise. The alleged racketeering activity consists of mail fraud, both upon the Patent and Trademark Office and upon plaintiff himself. As noted above, the allegations of fraud upon the Patent and Trademark Office are not actionable by this plaintiff under RICO. Furthermore, the alleged representations made to plaintiff through the mails consisted of offers or demands to purchase his stock, which plaintiff admittedly refused to do. The very language of section 1962(b) requires that the defendant obtain an interest in an enterprise *through* a pattern of racketeering activity. *A fortiori,* the mailing of proposed assignments and other documents that plaintiff refused to sign cannot be actionable, as those documents did not result in the defendant's acquisition of any interest in Crown Industries. Plaintiff's asserted claim for violation of section 1962(b) therefore fails for lack of any

proof of "acquisition or maintenance" injury, separate and apart from any injury suffered as the result of predicate acts. ·*Advocacy Org.,* 176 F.3d at 329–30.

The proofs presently before the court would not sustain a jury verdict on count I or count II on either of the RICO theories alleged. Consequently, the moving defendants will be granted a summary judgment on counts I and II of the second amended complaint.

### B. *Fraud*

Count III asserts a claim for fraud, again arising from the allegedly wrongful naming of the inventor of the invention disclosed in the '843 patent. Plaintiff apparently attempts to proceed on both federal and state theories. His federal theory is based upon violation of the Patent Act, which requires that an application be made by the inventor. 35 U.S.C. § 111(a)(1). Plaintiff's state theory is apparently based upon Michigan common law.

 Plaintiff's federal theory is indisputably meritless. Plaintiff has not cited to this court any authority supporting the existence of a private cause of action for violation of the application provisions of 35 U.S.C. § 111. This statute governs proceedings before the Patent and Trademark Office, and it does not purport to create a private cause of action. Furthermore, even assuming the existence of a private cause of action, plaintiff would have no standing to assert one. As noted above, plaintiff agreed to assign all his rights in the patent to Crown Industries. Consequently, plaintiff lacks standing to seek any adjudication with regard to the patent itself. *See In Re FedPak Sys., Inc.,* 80 F.3d 207, 212 (7th Cir.1996).

 Plaintiff's common-law claim for fraud under Michigan law fares no better. Under Michigan law, the elements of actionable fraud are:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it

was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 816 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 175 N.W. 141, 143 (1919)); *accord Semaan v. Allied Supermarkets, Inc. (In re Allied Supermarkets)*, 951 F.2d 718, 723 (6th Cir.1991). It is impossible to square plaintiff's allegations with this definition of fraud. The alleged misrepresentation was not made to plaintiff, nor did plaintiff act in reliance upon it. Furthermore, plaintiff could not possibly have been injured by the alleged misrepresentation concerning inventorship. Plaintiff parted with his interest in the patent in May of 1991. The alleged misrepresentation by defendants was not made until the next year. Plaintiff cannot possibly prove that he was induced to part with his interest in the invention in May of 1991 by misrepresentations made by defendants one year later.

Plaintiff's fraud claim, as set forth in count III, is indisputably meritless. Defendants will be granted a summary judgment on count III.

## C. *Derivative Claim*

Count V of the second amended complaint is not a model of clarity. Its caption—"Misappropriation of Corporate Opportunity—Breach of Fiduciary Duty"—appears to assert a derivative claim on behalf of Crown Industries. A shareholder's derivative claim, by its very nature, is brought to enforce "a right of a corporation" in circumstances in which the directors have failed to enforce that right. *See* Fed.R.Civ.P. 23.1. Consequently, it is axiomatic that a derivative claim must be one belonging to the corporation, not the shareholder himself. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 527, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). The body of count V, however, does not purport to assert a claim for injury to Crown Industries itself. Rather, plaintiff complains that the defendant directors refused to honor plaintiff's contract, falsely acquired a patent on plaintiff's invention "without compensation to him," and continued to sell the product without compensating plaintiff (¶ 110). These allegations fail to state a shareholder's derivative claim for injury to the corporation itself. Rather, they are allegations of violation of plaintiff's own rights, which are comprehended in his other counts. These purported derivative claims will be dismissed on summary judgment for failure to state a claim upon which relief can be granted.[3]

The only allegation that arguably comes within the ambit of a shareholder's derivative claim is that the directors of Crown Industries diverted the property, property rights and contractual rights of the corporation to themselves, for their own personal benefit. (Sec.Am.Comp.¶ 112). Plaintiff has failed to raise even a scintilla of proof in support of this allegation. There is no evidence of corporate waste, assignment of patent rights to another party, theft of corporate opportunity, or any other activity by the individual defendants that could be deemed a violation of their duties to the corporation. Defendants are therefore entitled to a summary judgment on the derivative allegations in count V, for a complete failure of proof.

## D. *Count VI—Civil Conspiracy*

Count VI alleges in vague fashion a civil conspiracy among all named

---

**3.** Rule 23.1 requires that complaints asserting shareholder's derivative claims be verified. The second amended complaint is not.

defendants. Under Michigan law, conspiracy is not a separate cause of action. Rather, it is a method by which co-conspirators may be held liable for the wrongful acts of others. *See Fenestra, Inc. v. Gulf American Land Corp.,* 377 Mich. 565, 141 N.W.2d 36, 48–49 (1966). Consequently, allegations of conspiracy must be based upon an underlying, independent wrongful act, whether it be breach of contract or tort. *See Fenestra,* 141 N.W.2d at 49; *Early Detection Center, P.C. v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830, 836 (1986); *accord Ram Products Co. v. Chauncey,* 967 F.Supp. 1071, 1083 (N.D.Ind.1997); *Anthony v. Madison,* 896 F.Supp. 714, 717 (E.D.Mich. 1995) (applying Michigan law). In the present case, none of plaintiff's allegations of breach of contract or tort is even colorable. In the absence of a colorable claim of breach of contract or tort, the conspiracy count adds nothing and must be dismissed.

### E. *Conversion*

■ Count VII purports to set forth a state-law claim for theft of trade secrets. Plaintiff alleges that defendants wrongfully removed plaintiff's property, including drawings and customer lists, from his offices and converted it to their own use. He further asserts that when he inquired about his property, defendants falsely claimed that it had been stolen. Plaintiff has completely failed to either plead or prove a cognizable claim for theft of trade secrets under Michigan law. A plaintiff in a trade secrets case bears the burden of pleading and proving the specific nature of the trade secret. Plaintiff must also present evidence that the items or information were truly secret; that is, that specific measures were taken to guard their confidentiality. *See Kubik, Inc. v. Hull,* 56 Mich.App. 335, 224 N.W.2d 80, 87 (1974); *see also Rothschild v. Ford Motor Co.,* 2 F.Supp.2d 941, 950 n. 12 (E.D.Mich.1998). In addition, a plaintiff must demonstrate numerous other factors, which Mr. Wilson has not attempted to allege or prove, to

establish a trade secret. *See Rothschild,* 2 F.Supp.2d at 950; *Hayes–Albion v. Kuberski,* 421 Mich. 170, 364 N.W.2d 609, 614 (1984).

■ Nevertheless, count VII does allege, in minimal fashion, the elements of a conversion claim under Michigan law. Under Michigan law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein. *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 486 N.W.2d 600, 606 (1992); *Sarver v. Detroit Edison Co.,* 225 Mich. App. 580, 571 N.W.2d 759, 761 (1997). However, when faced with defendants' motion for summary judgment on this claim, plaintiff was not privileged to rest upon these minimal allegations. Rather, plaintiff was required to support his allegations with proof sufficient to support a jury verdict in his favor. *See Noble v. Chrysler Motors,* 32 F.3d 997, 999 (6th Cir.1994). The record is devoid of any proof to support plaintiff's accusation of theft or conversion against these defendants. As plaintiff was in Virginia at the time of the alleged conversation, he obviously has no firsthand knowledge concerning the fate of his property. Plaintiff was therefore required to develop, through research or investigation, some facts to support his claim. As plaintiff has failed to do this, defendants are entitled to summary judgment.

### F. *Shareholder Claim*

Count VIII of the second amended complaint, at least in part, has colorable merit. Count VIII essentially sets forth two claims. The first is to compel distribution of shares representing plaintiff's 13% interest in Crown Industries. The second is for an accounting of the monies due to plaintiff under the Letter of Understanding.

■ Plaintiff's action to compel distribution of shares is meritorious. Defendant's own statement of facts concedes

that plaintiff has never been provided with certificates representing his shareholdings in Crown Industries. By moving for summary judgment, defendants invite an adjudication on the basis of undisputed facts, even in the absence of a cross-motion by plaintiff. *See Rogers v. Management Tech., Inc.,* 123 F.3d 34, 37 (1st Cir.1997); *Eckford–El v. Toombs,* 760 F.Supp. 1267, 1272 (W.D.Mich.1991); *see generally,* CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2720 at 346–54 (3d ed.1998). The undisputed facts demonstrate that the parties agreed to the formation of Crown Industries, Inc., that plaintiff assigned certain tangible and intangible property to the corporation in exchange for 13% of the stock, that the company was formed and conducted business, but that no stock was ·ever issued to plaintiff. Defendants have not advanced any defense to this claim, nor have they suggested why plaintiff is not legally and equitably entitled to an issuance of the stock promised to him. Accordingly, defendant Crown Industries, Inc., and its officers and directors, will be ordered to provide plaintiff with stock certificates representing 13% of the shares of that corporation.

 The second aspect of count VIII is to compel an accounting of the corporation's income and of the royalties and other payments due to plaintiff. Under Michigan law, a suit for an accounting invokes a court's equitable powers. *See Bellware v. Wolffis,* 154 Mich.App. 715, 397 N.W.2d 861, 864 (1986). A plaintiff seeking an accounting has no right to proceed in equity if he has an adequate remedy at law. *See Eyde v. Empire Of America Fed. Sav. Bank,* 701 F.Supp. 126, 130 (E.D.Mich.1988) (applying Michigan law). The burden of proof is on plaintiff to show the inadequacy of the legal remedy. *Id.* The Michigan courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue. *See Cyril J. Burke, Inc. v. Eddy & Co.,* 332 Mich. 300, 51

N.W.2d 238, 239 (1952); *Boyd v. Nelson Credit Centers, Inc.,* 132 Mich.App. 774, 348 N.W.2d 25, 27 (1984). Under these principles, plaintiff has no right to an equitable accounting. Plaintiff has had a full opportunity for discovery in this case, but apparently has not been able to produce any evidence to support his claim that more royalty and commission payments are due, over and above those reported by the corporate defendant. Plaintiff's ability to bring a damage claim for breach of contract, aided by the liberal discovery available under the Federal Rules of Civil Procedure, is a fully adequate remedy at law. Plaintiff has failed to show the necessity of invoking extraordinary equitable jurisdiction to order an accounting. In such circumstances, the courts routinely dismiss claims for accounting. *See, e.g., Eyde,* 701 F.Supp. at 130; *Boyd,* 348 N.W.2d at 27.

In summary, plaintiff will be denied all relief under count VIII except for an order requiring the issuance of stock certificates.

### G. *Breach of Express Contract*

 In count IX, plaintiff alleges a breach of the express contract embodied in the Letter of Understanding. Plaintiff asserts that defendants breached the Letter of Understanding by failing to pay him the amounts due and owing thereunder and by entering into agreements with other distributors without directing the income to Crown Industries, Inc.

 Under Michigan law, to recover on a breach of contract theory, a plaintiff must prove (1) that a contract existed between the parties; (2) the terms of the contract; (3) that defendants breached the contract; and (4) that the breach caused plaintiff injury. *See Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277, 1309 (W.D.Mich.1986), *aff'd,* 829 F.2d 13 (6th Cir.1987). The first two elements of the cause of action are undisputed. The third element, breach of the contract, is disputed. As noted in detail in the Statement of Facts, defendants filed an affidavit estab-

lishing the total amount of corporate sales and the payments due to plaintiff under the contract totaling $416.

When faced with this evidence, plaintiff was not privileged to rest upon the vague and expansive allegations of the complaint. Rather, plaintiff had the burden of coming forward with admissible evidence sufficient to raise a triable issue of fact concerning breach of the contract. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In response, plaintiff has not produced any discovery, materials, accounting records, or expert witness testimony to establish the amount of sales. Rather, he speculates that the corporation must have sold more product than it now admits and must have had extensive distributorship arrangements. Plaintiff's submissions, as discussed in the Statement of Facts, are insufficient to raise a triable issue of fact. No reasonable jury faced with the proofs now of record could conclude that defendants have understated the sales or royalties due thereon. In fact, plaintiff has not submitted to this court any evidence upon which a trier of fact could base a damage award in any amount other than $416.

The undisputed facts show royalties due to plaintiff from defendant Crown Industries in the total amount of $416. As noted previously, the court has authority to enter judgment for plaintiff in this amount, even in the absence of a cross-motion. Proofs are so one-sided on plaintiff's breach of contract claim that a judgment against defendants in a greater amount would not be allowed to stand. Plaintiff will receive judgment against Crown Industries of $416 upon this claim.

### H. *Tortious Interference*

Plaintiff's final claim, asserted in count X, is for tortious interference. In the heading of the count, plaintiff names defendants Waters & Morse, Sebastian, Hoag, and John Waters, and labels the claim as one for tortious interference with business opportunity. In the body of the count, however, plaintiff identifies the business opportunity as his relationship with Crown Industries, Inc., whereby plaintiff had a reasonable expectation of economic gain of 13% of the profits of the business. (Sec.Am.Comp.¶ 142). This interest is clearly contractual in nature, being governed by the Letter of Understanding between the parties. Consequently, it is unclear whether plaintiff asserts a claim for tortious interference with business opportunity, tortious interference with contract, or a combination of both. Nevertheless, plaintiff asserts that the named individuals interfered with his relationship with Crown Industries and destroyed his expectancy of economic gain.

The elements of a claim for tortious interference with contract under Michigan law are (1) the existence of a contract; (2) breach of that contract; and (3) instigation by defendants of that breach without legal justification. *See Henslee, Monek & Henslee v. D.M. Central Transp., Inc.,* 870 F.Supp. 764, 766 (E.D.Mich.1994). In the present case, the existence of a contract, embodied in the Letter of Understanding, is not disputed. As the court has found above, however, there is no evidence to suggest that Crown Industries has breached that contract in any of the ways alleged by plaintiff. The Sixth Circuit has noted that Michigan law requires a plaintiff to prove contract breach if he is to prevail on a tortious interference with contract claim. *DeCoe v. General Motors Corp.,* 32 F.3d 212, 218 (6th Cir.1994) (citing *Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 194 Mich.App. 300, 486 N.W.2d 351, 358 (1992)). As plaintiff has failed to prove a breach of contract by Crown Industries, he cannot prove tortious interference with that contract by the individual defendants.

To prove a claim of tortious interference with a business opportunity, a plaintiff must show that: (1) he had a valid business relationship; (2) the defendant knew of the relationship; (3) the defendant intentionally interfered with and caused a

breach of the relationship; and (4) plaintiff suffered damage as a result of the termination of the relationship. *See Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 407 (6th Cir.1999); *Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc.*, 175 Mich.App. 723, 438 N.W.2d 349, 354 (1989). In addition, plaintiff must allege either "the intentional doing of a *per se* wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 138 Mich. App. 360, 360 N.W.2d 881, 891 (1985); *accord Kattar v. Three Rivers Area Hosp. Auth.*, 52 F.Supp.2d 789, 801 (W.D.Mich. 1999). Plaintiff's theory, as pleaded in count X, is that the individual defendants somehow interfered with plaintiff's expectancy of a 13% royalty under the contract. This theory suffers from the same infirmity as plaintiff's tortious interference with contract claim. Plaintiff has not shown that his valid economic expectancy with regard to royalty payments has been undermined in any way by the defendants. Plaintiff remains a shareholder of Crown Industries and is entitled to 13% of the profits of that corporation. He has provided no evidence whatsoever to show that the corporation has been profitable and that he has somehow been deprived of dividends otherwise payable. Moreover, plaintiff has failed to show the existence of any wrongful act, which Michigan law defines as one either inherently wrongful, or never justified in any circumstances. *Henslee*, 870 F.Supp. at 766.

Additionally, both of plaintiff's theories of intentional interference suffer from a common flaw. Normally, only a third party to a contractual or business relationship may be sued for tortious interference. *See Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F.Supp.2d 950, 954 (E.D.Mich.1998); *Murphy v. Birchtree Dental, P.C.*, 964 F.Supp. 245, 250 (E.D.Mich.1997); *Reed v. Metro Michigan Girl Scout Council*, 201 Mich.App. 10, 506 N.W.2d 231, 233 (1993). Corporate agents are generally not liable for tortious interference with regard to the corporation's contracts or business relationships, unless the agent acted purely for personal gain with no benefit to the corporation. *Murphy*, 964 F.Supp. at 250; *Reed*, 506 N.W.2d at 233. The named defendants in count X are officers, directors or attorneys for Crown Industries, none of whom can reasonably be considered a third party in the circumstances of this case. Plaintiff has not come forward with any evidence to support a jury finding that the actions of the individual defendants, made on behalf of the corporation, were actually "purely for personal gain and with no benefit to the corporation." Consequently, the court must reject plaintiff's claims of tortious interference with contract and with business opportunity on this second and independent ground.

In summary, plaintiff has asserted, throughout the life of this litigation, extravagant claims of wrongdoing and conspiracy against numerous defendants. Plaintiff was ultimately forced to dismiss most of the defendants in this action. Plaintiff suffered the loss of his first counsel, because the court found that she could no longer represent plaintiff consistent with her duties under the Code of Professional Responsibility. Now, after two years of litigation, the filing of defendants' motion for summary judgment required plaintiff to "put up or shut up" with regard to the proofs supporting his extensive claims. *See Cox*, 53 F.3d at 149; *Street*, 886 F.2d at 1478. It is not enough for plaintiff's counsel to argue that a genuine issue of material facts exists. Counsel must not only identify the issue, but also must point to the proofs upon which a reasonable jury could base a verdict in plaintiff's favor. Plaintiff has utterly failed to meet this burden of production, except with regard to the question of issuance of corporate shares and royalties of $416 payable.

For the foregoing reasons, the moving defendants will be granted a summary judgment on all plaintiff's claims, except for that aspect of count VIII which seeks the issuance of certificates of stock and that aspect of count IX that seeks royalties. With regard to those claims, summary judgment will be entered on behalf of plaintiff.

## II. Counterclaim

The counterclaim sets forth a claim for account stated on behalf of Continental Development Co. and Robert Hoag: Continental alleging that plaintiff owes $5,092.02 on loans made to plaintiff during the term of the business relationship, and Robert Hoag claiming $6,353.22 on the same basis. Defendants' motion for summary judgment claimed $11,410.69 ($5,174.82 owed to Crown Industries, Inc. and $4,493.87 owed to defendant Hoag). (docket # 102, ¶ 1; Ex. C).

As noted in the Statement of Facts, plaintiff admitted under oath both the fact of the loans and the accuracy of the amounts claimed. The efforts of plaintiff's counsel to create an issue of fact with regard to the counterclaim are futile, in light of plaintiff's admissions under oath. Moreover, those efforts are unpersuasive, in that they are based upon an accounting document issued in 1991, before all loans were made.

The court finds that Robert Hoag is entitled to judgment on his counterclaim as a matter of law in the amount of $4,493.87, as neither liability on the debt nor the amount thereof remains in dispute. Judgment will therefore be entered on behalf of Hoag on his counterclaim. Defendants' own exhibits show that plaintiff owed the remaining debt to Crown Industries. (docket # 102, Ex. C; Sebastian Aff., ¶ 6). Crown Industries did not pursue a counterclaim. Defendant Continental Development's counterclaim is totally undercut by defendants' own exhibits. Accordingly, defendant Continental Development's counterclaim will be dismissed.

## III. Sanctions and Attorney's Fees

Defendants seek an imposition of sanctions and attorney's fees against plaintiff and his counsel pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927. For the reasons set forth below, defendants' motion for such relief will be denied.

■ 35 U.S.C. § 285 allows for the assessment of attorney's fees in patent litigation "in exceptional cases." Although a patent is involved in this case, the case did not arise under the patent laws. Plaintiff's complaint was neither for infringement nor for declaratory judgment rights under a patent. At all times, it has been undisputed that all patent rights belong to defendant Crown Industries. In fact, this court has found that the naming of the inventor with regard to the '843 patent was not material to any of plaintiff's claims. Consequently, this case did not arise under the patent laws, and an award of attorney's fees under 35 U.S.C. § 285 would not be appropriate.

■ Defendants also seek an award of attorney's fees pursuant to 28 U.S.C. § 1927. That statute allows the court to assess costs, expenses and fees against an attorney who unreasonably and vexatiously multiplies proceedings in any case. *See Cook v. American Steamship Co.*, 134 F.3d 771, 774 (6th Cir.1998). Although the statute by its terms would allow relief only against plaintiff's counsel, some authority allows section 1927 relief against *pro se* litigants as well. *See, e.g., Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 471 (9th Cir. 1994).

Upon review, the court concludes that relief under section 1927 is not warranted in this case. The court has found that plaintiff is entitled to some relief, however minimal. Thus, the court cannot conclude that all of the defense costs and fees in this case were needlessly incurred. Section 1927 allows the court to assess only "excessive" costs and fees directly attributable to the offending party's misconduct.

*See Ridder v. City of Springfield,* 109 F.3d 288, 298–99 (6th Cir.1997). Defendants have made no effort to establish the extent or amount of excessive costs incurred in this matter. In light of the fact that plaintiff is entitled to some relief, defendants are not entitled to the complete reimbursement they now seek, nor have they provided the court with the basis for determining those costs directly attributable to alleged misconduct. Furthermore, defendant Continental Development was itself guilty of pursuing an unproved claim, by seeking summary judgment on a counterclaim against plaintiff for a debt owed to Crown Industries, a separate defendant. In these circumstances, the court declines to impose costs and fees against plaintiff under section 1927.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment (docket # 102) will be granted in part and denied in part. Judgment will be entered for defendants on all counts and claims, except for plaintiff's request for an order requiring issuance of certificates of stock (count VIII) and his request for compensation for breach of contract (count IX). Judgment for plaintiff will enter on count VIII in the form of a mandatory injunction requiring issuance of stock certificates. Judgment will enter on count IX awarding plaintiff $416 against Crown Industries, Inc., representing all compensation due plaintiff under the agreement of the parties. Summary judgment will enter on behalf of defendant Robert Hoag in the amount of $4,493.87, plus statutory interest from the date of judgment. Summary judgment will be entered in favor of plaintiff upon Continental Development Company's counterclaim.